The starting point in this case is that trial counsel was deficient in failing to present the exculpatory evidence in Dr. Page's report. This evidence should have been presented to the jury, and everyone agrees. The only question is whether Mr. Crockett was prejudiced. Counsel, if I could maybe suggest a different starting point, and I'm sorry to interrupt so early in your argument, but it's a kind of preliminary matter. Why are we allowed to consider this matter under 2254A, given that your client is not in custody, and wasn't, I don't think, at the time the federal proceedings began, or am I wrong about that? I believe he was in custody at the time the federal proceedings began, but under this court's precedent in Plymouth v. Morandy, there's a collateral consequences exception to the mootness doctrine. Yeah, I agree on the mootness issue, but is the mootness issue the same as whether he's in custody in the first place? Or it may be your argument is if he was in custody at the time the proceeding began, that's the determinant of time. That's precisely right, Your Honor. Thank you. And Mr. Crockett was prejudiced because the paper report would have demonstrated that he could not have been the driver in the accident that killed his best friend. This extreme risk of wrongful conviction is precisely what habeas is designed to remedy. It might be helpful to start with the actual text of the paper report, and that's on JA 1036-37. It says that the cupping in the seatbelt was consistent with loading from occupant forces, and it goes on to say that if the seatbelt was not in use during the collision, one would not expect this cupping. So right there, you have a statement that the evidence was consistent with the driver having worn the seatbelt, and that the cupping was inconsistent with alternate explanations. That is reasonable doubt right there. To reach the unreasonable conclusion that the Virginia Supreme Court did, you'd have to ignore all of that context from the paper report. And that's before you even get to Dr. Pape's potential testimony at trial, which sentencing counsel stated would show there was absolutely no other way that the seatbelt cupping would have occurred except by being worn by the driver during the collision. Well, that's not what the report says, correct? I mean, that's added stuff, and maybe that would have been there. Maybe it wouldn't. I mean, that evidence of seatbelt cupping is stuff that's, you know, fault. Even when you have testimony that is to a regional degree of engineering certainty, that stuff is heavily contested evidence. I mean, the cupping here, I think the expert even admitted, was not nearly as severe as you would have in a head-on collision. And there's all sorts of stresses and strains that happen with seatbelts during the course of that product's life. My only point, and that's not to say his opinion's right or wrong, but those issues are, you know, very contested issues. And to somehow suggest because he said that, oh, everything's over, he was the driver, that seems to stretch it, no pun intended, you know, way more than the report could do. I don't think so, Your Honor. And the reason why I say that is that it's not contested in this case. There's no expert evidence on the other side that would cause a juror to doubt Dr. Pape's opinion. And even from the four corners of the Pape report itself, before you even reach any of the statements. But that, I mean, I think that's fair, except for all the evidence about, you know, not seeing someone leave the car and stuff like that. But in terms of the merits of there not being evidence to contest the report, I mean, that's because the report wasn't subjected to cross-examination. I mean, there wouldn't be because it wasn't part of the trial. Right. That is precisely right. And why grant a habeas with the state's opportunity to do whatever they want after is the appropriate remedy. As for Your Honor's point about the witnesses who observed the accident, I think it's important to note that to a person, every single one of those witnesses testified that it was extremely dark in that area. In fact, the first two individuals to arrive and see the accident were neighbors. They lived right by where the accident took place. And they couldn't even find the car at first because it was so dark in the area. So the fact that the Commonwealth relies on these incredibly flawed witness statements is telling. How long was it that the first witness got to the scene, right to the car? Pamela Patrick testifies that it was approximately one minute. All right. So your supposition is, for prejudice, is that the real driver was in the car wearing a seat belt. And after the accident, he unleashes the seat belt and goes out the window. Is that right? I'd like to answer your question in two different ways, Your Honor. Well, I just want to start that because I haven't finished my question. But the fact is, he would have to release the seat belt and he would have to go out the window. The door was not opened and the door was incapable of being opened. That is correct. The window was down, apparently. That is correct. All right. And at the time everybody came to the scene, Crockett's body was half in the front seat and half in the back seat. Legs over toward the steering wheel and the body over the seat with the head in the back seat. Right. Yes, but I'd like to add a couple details to that description. Well, it's not important to what I'm asking. I'm suggesting that, okay, you have a driver in that driver's seat. He runs into a tree. He's clearly stunned. He's got to figure out where he is and what he's doing. He then decides, oh, I have to get out of here. So he has a body lying over him. He has seat belts that he has to undo. He has to move the body off of him to get out of the window and has to climb out the window. That's the supposition. I looked at all the pictures and read where everybody placed the body. They use different characterizations, but they all have the body the same place. And so my question is, this is all before a jury. And the supposition that because the seat belt looks like it was operated because it has a cup in it, therefore, there had to be a driver. That doesn't follow in this context to a jury. It didn't follow even to me. I looked at that picture. It looked like just a little wrap. I've never seen a seat belt cupped. I didn't see any evidence of studies that show cupping or that the seat belt over 10 years didn't get cupped sometime earlier for something. In other words, this is so marginal in view of the facts that were presented to the jury. For you to show prejudice, you're going to have to show that there would have been a difference had he gotten this guy's expert testimony and put it into trial. I must say it's a pretty heavy, heavy burden. I agree completely with Your Honor's characterization of the prejudice inquiry. The problem for the Commonwealth is that they have to grapple with this definitive statement from Dr. Pape that the cupping would only have occurred through a total loss collision. And that the statements from Dr. Kirk and Robert Bagnell that Mr. Crockett could not have- Excuse me, counsel. We just seem to be replaying the fine points of the jury trial and sort of ignoring the overall framework of this, which is clearly under AEDPA. And you've got the Virginia Supreme Court saying that there's no prejudice under Strickland. And you've got to show by clear and convincing evidence that that's wrong or that there was an unreasonable application of clearly established law. And, you know, you may come to a different conclusion, but we're not reviewing this as a court of, you know, in a de novo or initial impression. The one thing, it seemed to me that this seatbelt thing was pretty marginal. You're trying to make a whole lot out of it, but it seemed to me that that was much less weighty than the fact that nobody saw this so-called third driver emerging from the car and the, as Judge Niemeyer points out, it's odd to think that the other driver survived the crash, immediately extricated himself and fled without anybody having seen him. That's one thing. And then Crockett, when he's in custody, he actually asked Officer Wallace if he had seen, um, he denied to Officer Wallace that anyone else was in the car. And he said, no, did I hit someone? And then who is this third driver? Well, the only person, who is this third person? It was the driver. The only person you have is Mr. Palmer, who nobody recalls seeing him with any injuries or leaving the party with Crockett and Corti. Um, and in light of all of that, you may disagree with what the state court did, but it doesn't even come close to being an unreasonable application of clearly established law or being, um, a plainly erroneous, um, error on the facts. It seems to me that the balance of the evidence supports what the Virginia Supreme Court found. I respectfully disagree, Your Honor. And the reason why is that we have unrebutted expert testimony that the driver of the car was wearing the belt and that Mr. Crockett was not. That's sufficiently- Let me ask you this. Just getting back to Judge, you're sort of recharacterizing Judge Wilkinson's question. Uh, I think his question was focusing on the fact that the state court reviewed this and made a decision on the merits. And the state court, uh, uh, and the, uh, the statute says, when the state court does that, we're not allowed to review it. Isn't that right? That's correct. Very first sentence, it says, once the state court makes that decision, federal courts are out of it. Unless it's under- With the exception that the state court went off its rocker, off the tracks. As a matter of fact, Richter talks about, uh, the notion that it's beyond any reasonable possibility. When I read the Supreme Court's opinion, because of all the facts we're talking about, how can you conclude that that was just unreasonable? That was, they were, they were, uh, jurists that didn't get it. It's unreasonable. That's really your standard. I, I agree, Your Honor. And it's unreasonable in two ways. The first is that its reliance on this word suggests in the paper report to conclude that Dr. Pape was somehow tentative in his conclusion. It's just not right. It's belied by the sentences before and after in the paper report. So that's one way. Another way is that this court's precedent- Well, I didn't, I didn't, uh, understand the difference. The, uh, uh, the prior sentence, I think he says that this cupping is consistent with, uh, uh, uh, wearing a seatbelt in a, in a collision. And then he says that suggests. Now, why aren't those two tantamount, uh, uh, equality? He says the cupping was consistent with loading from occupant forces. If the seatbelt was not in use during the collision, one would not expect this cupping. So that's a conclusion. This is all speculation. This is all speculation. What if, what if, what if? And, you know- We could have an accident two years before. The same seatbelt could have been used and the car was fixed. I mean, there's so much possibility, but my whole point is not, uh, evaluating that, which I must say, if I were evaluating it, I would have demanded a lot more for letting it in. But, uh, uh, quite apart from that. The question is when the Supreme Court looked at all that, it concluded that there was no prejudice. It didn't think that was a weighty enough. That was its judgment. And that judgment may be wrong. And you may be able to demonstrate it's wrong. But you haven't gotten us the power to decide that. We have to say it's even beyond that, that they went so far and they denied a fundamental constitutional right, uh, in their, uh, uh, they didn't understand the law. They didn't understand the facts. Something, uh, they got wrong. It's a very high standard. And the court has repeatedly emphasized how difficult it is for you to criticize a court when they rule on the merits. Now, if they didn't rule on the merits or something procedural, you have a different ball of wax. But, uh, uh, here we have, uh, we have an actual decision by the state court. And the statute says in its very first opening, we're not allowed to review that, but for an exception. And that exception is a high mark. And so now instead of looking at the evidence, as you're arguing, you keep coming back to this evidence, which I think is, must say is pretty thin, but set that aside. You have to conclude that a court looking at that evidence was off its rocker, so to speak, in concluding that that wasn't helpful. I, I agree with the standard, Your Honor. And the standard is quite high, but this is such a clear-cut case. What's the, you said the language suggests was given too much emphasis, but you said you had two reasons that it was unreasonable. What was the second? The second reason the Virginia Supreme Court's opinion was unreasonable is that this court's precedent makes clear that it is fatally unreasonable not to consider the trial evidence and the post-conviction evidence favoring acquittal and explicitly reweigh that evidence against the state's evidence of guilt. And here the state's evidence of guilt is incredibly thin. There's no direct evidence whatsoever connecting Mr. Crockett to being the driver of the car. Nobody saw him driving the car. And not to mention, you have experts testifying that it is impossible for him to have ended up in the position that he ended up in, in the back of the car, had he been the salted driver. So with those two pieces of evidence in conjunction, it's hard to imagine a juror not having reasonable doubt, which is a standard even higher than the high standard that Judge Niemeyer identified. Thank you, Your Honors. I'd like to reserve the remainder of my time for rebuttal. Ms. Johnson, whenever you're ready. Thank you, Your Honor. Good morning. May it please the court, Victoria Johnson for the respondent in this 2254 habeas matter. The district court properly denied habeas relief in this case and an evidentiary hearing as well. The state court judgment reasonably and faithfully applied the Strickland standard and reasonably interpreted the facts of this case. The record refutes Mr. Crockett's factual allegations and Mr. Crockett has not shown Strickland prejudice. This court should affirm. Counsel, the Virginia Supreme Court, I think I'm right on this, addressed prejudice, particularly as it related to the report and the seat belt evidence. I don't think the Virginia court talked about the affidavits of the jurors. Am I correct about that first as a factual matter? That is correct, Your Honor. What's your position about whether that evidence, which wasn't ruled on, how that affects the standard we apply and the response from your colleague that warrants our relief? I believe that the presumption, unless there's something to the contrary in the record, is that the state court considered all of the evidence before it. Here the state court in its state court order stated that it reviewed the exhibits that Mr. Crockett had attached to a state habeas petition and that would include the juror affidavits. So your view is that was considered even though it wasn't expressly discussed and we should rule on it as if it was just like the persuasiveness of the report? Yes, Your Honor. I think everything was in. There were, I believe, 400-some exhibits to the state habeas petition or 300-some. I don't think it's reasonable that the state court would have listed every one, but the state court said that it considered the entire record. I think the Supreme Court, particularly in Harrington v. Richter, has wrapped our knuckles time and again. I can always, if given enough time, pick some flaw in a state court proceeding. Which I think, I don't blame the appellant for trying to do that, but that's not the way we can go about it. And I think that you have to just in fairness to the state courts here and to reverse the, say the Virginia Supreme Court was unreasonable or off the rails or no fair-minded jurist could have reached that conclusion. You know, it's almost insulting to what I think is a very fine court. And the Supreme Court has said, look at this thing as a whole. And we are now, this accident occurred in the year 2008, and we are now 14 years later asked to replay a jury trial. And this seatbelt thing seemed to me to be just so totally speculative. What difference would it have made? How, you know, how do we know? I mean, what would have happened differently in the way of how they'd been thrown forward or backward or what position would his feet have been or whatever? It seemed to me that was just marginal compared to the fact that there was no eyewitness. They say, oh, well, it was dark at night. They haven't, you know, but that was all before the jury. The jury knew this. One of the eyewitnesses was, came on and looked at this scene pretty closely after the time of the accident. And I don't know how you get around the fact that Crockett says to the police officer, did I hit somebody and deny that anybody else was in the car? That's not, you know, that's not a coerced confession. He's just saying that. Yes, your honor. And this, you know, if the only person that he ever identified specifically as being a third driver, there were no witnesses that saw any injuries on Mr. Palmer or leaving the parties with Crockett and Cordy. I mean, and say, I don't blame the appellate's counsel for trying to pick flaws at it. You know, flyspecking, the epistandard is about as strong as words can make it. It's that strong. And, you know, for some reason, in some cases, we just have difficulty making it stick. And, you know, way back when, in the early 1960s, the late 1960s, I was a member of the Massachusetts Supreme Court, and I think he was a member of the Massachusetts Bar, said the degree of pure resentment that came from one federal judge overturning the views of seven or five or nine state Supreme Court justices. I mean, it really rankles. And the Supreme Court has tried to make us respect our state court brethren. And as a general matter, I want to say these state Supreme Courts, there are a lot of fine justices on them, and they don't, as a rule, make irrational or unreasonable decisions. And I agree with that, Your Honor, and I think that that is a lot of the congressional intent behind AEDPA that talks about the importance of comedy and federalism in determining federal habeas cases. And I think also, to Your Honor's comments, the federal court under AEDPA reviews the state court decision, not necessarily its underlying reasoning. Now, here, we have real good underlying reasoning. In the first part of the Virginia Supreme Court's habeas order, the appellate order, the court lays out the facts. It lays out all of these facts about how, you know, Mr. Crockett at the hospital asked the officer, did I hit someone? He asked the officer, you know, he told the officer, well, I don't know anything about a traffic accident, but I was involved in a traffic incident. He talked to the officer about, you know, denied saying that there was anyone else in the car. And when he was informed that his friend who had been in the car with him had perished in the accident, his response was, that figures. Those are all Mr. Crockett's own There's so many people who rushed to the scene and they were there looking to render aid. They heard this horrific crash. They saw this car wrapped around the tree. I know the court has seen the pictures. This car was absolutely mangled. This was a horrible, horrible traffic accident. And you have people that were there within a minute, and they all say that Mr. Crockett is has his feet in that, underneath that steering wheel. He's kind of angled. Officer Buckner described him as his shoulders being kind of in the passenger seat. His waist is at the console, you know, his head and shoulders are in the back passenger seat. And that's exactly where you'd expect a driver to end up in a passenger side impact. If you're examining the accident, the more remarkable thing is that he's in that position. And if somebody else was driving, he would have had to get out from under that man. Yes, Your Honor. And I think if he came out from under that man, the man would have been pushed over on his side or in some other place. And that would have taken time, more than a few seconds. And everybody was there within less than a minute or a minute, whatever. And I think those are the key facts to this case. To support Mr. Crockett's theory, this third person driver would have had to unbuckle his seatbelt, get out from under the deployed airbag, which is no joke, you know, and would have to get out from under at least Mr. Crockett's legs, bail out the window, run through the woods, and arrive back at this party with no visible injuries, no mud on him, no debris on him. And that it's just pretty near to physical impossibility. Under these facts, the court can't say that the Virginia Supreme Court unreasonably applied the facts or unreasonably applied the Strickland standard. Furthermore, Your Honor. Well, the Supreme Court basically has said that we're supposed to decide whether a fair-minded jurist could have reached a different result. And the argument here is basically that the Supreme Court, that the appellant says the Go ahead. The question is not whether they were wrong. The court has told us that many times or whether we disagree. And the argument here, unfortunately, keeps going into the decisions about was Crockett prejudiced or not. And we go through all the facts. And the only reason for going through the facts is to show that people can debate this. And if they can debate it, the whole idea is to let the state system take care of it. We're not an appellate court for the state. We're reviewing something collaterally to make sure the Constitution has been followed. And the court announced the constitutional principle, announced the prongs of Strickland, and summarized that accurately. So we knew it was applying Supreme Court law. And so the only question now is, was it within the realm of debate for a reasonable-minded jurist? And if it was, we're instructed to leave it alone. Yes, Your Honor. That is a correct summary of the AEDPA standard. And I believe that that AEDPA standard governs in this case. This was a decision on the merits. It was completely reasonable. Unless there is no way a reasonable fact finder or a reasonable jurist could come to the conclusion that the Virginia Supreme Court did, that ends the analysis under the AEDPA. For those reasons, I would ask the court to affirm the denial of habeas relief. If the court has any other questions for me, I'm happy to address them. Otherwise, I'll rest on my breath. Thank you, Your Honor. We thank you. Ms. Bateman, you have some time for rebuttal. Thank you, Your Honor. Mr. Crockett was wrongfully convicted. And even now, you have not heard the Commonwealth say it wasn't reasonably likely that a jury would have acquitted him. And it was unreasonable for the Virginia Supreme Court to have concluded otherwise. A lot of today's proceedings have revolved around- about the Supreme Court that they did that was so unreasonable. They looked at the entire record. The record was huge. They said they had all the exhibits there in their opinion. They got to claim three, which was your claim today. And they explained why they rejected that. You disagree with that. I understand. And that's not an unreasonable position, incidentally. I understand what you're saying. But they made that decision. They looked at it. Uh, don't you get the notion that the Supreme Court says if they've made that decision, we should leave him alone? That's not what the Supreme Court says. That's what the statute says. The statute says, leave him alone. It says the very first sentence, it says that we are not to review one habeas that's been decided by the state court. Here, the state court's malfunction was so extreme that it requires the federal habeas quorum to intervene. Why is it extreme? It was extreme because it did not consider the post-conviction relief evidence that it was impossible, virtually impossible for Mr. Crockett to have been the driver. And to the extent it considered it, which it didn't, it didn't consider it in the context of the trial testimony. To the extent it did, it could not have reasonably reached the conclusion that it did. And I'd like to address your Honor's concern that the third party driver would have to- would have had to come out from under the body of Mr. Crockett. That's just not the case because trial testimony reveals that Mr. Crockett's legs were on the back of the front driver's seat. So all you- Well, I read many people said it was sort of under the steering wheel too. It was sort of an angle. If you look at the pictures, the seat was bent back and he's bridging on- it would have been bridging on that seat. His body was in the back. But quite apart from that, there's no way that anybody with his body in that position wouldn't have had to figure out how to get the seat belt off, get out from under that body, wherever it was, how it- if it came over from the back seat, fine. But he still had to get out and he had to climb through the window. That's right. And- And so somebody sitting there within a few seconds of the accident- It's worth noting, Your Honors, that Jacob Palmer was a 16-year-old boy and this is an coup. It does not strain credulity that such an individual could jump out of the window. Counselor, we're just trying to replay the whole jury trial. We're just- we're just going over the facts and everything. But the jury heard most of what you were- was aware or heard most of what you were saying, except for the seat belt thing, which I think is marginal. But we're asking to throw deference to the wind in two respects. One, the rule of Virginia Supreme Court was not just incorrect, but was- which I don't think it was, but was unreasonable. And second of all, that the jury was wrong. And so the deference to the jury goes out the way- out the window. The deference to the Supreme Court- Virginia Supreme Court goes out the window. Your Honor, deference to the jury is not implicated here. The jury did not get to hear the testimony that was so crucial. There's always- that's always the case. It's always the attempt to make jury trial just seem a warm-up exercise for the post-conviction proceedings. And we are diminishing the places, as Justice Rehnquist repeatedly said in Wainwright v. Sykes, we are diminishing the place of the actual trial and the jury in these proceedings, not- and that's not even to mention what we're doing to state courts. It's a- it's a problem. We are just jumping the rails and moving into a land where we do not belong. AEDPA makes habeas relief difficult, but this is a case where that relief is warranted. We ask that you reverse and remand with instructions to grant the writ or to conduct an evidentiary hearing. Do you have anything further? I'll be glad to let you have the final word on this because we've taken a bit of your time. Thank you, Your Honor. Nothing further from me. Okay.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, A. Marvin Quattlebaum Jr.